```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
MARUBENI INTERNATIONAL PETROLEUM      :
(SINGAPORE) PTE LTD.,                 :
                                      :
               Plaintiff,             :   08 Civ. 11065(JSR)
                                      :
               -v-                    :   OPINION AND ORDER
                                      :
PRESTIGE MARINE SERVICES PTE LTD.,    :
                                      :
               Defendant.             :
------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

This case involves a maritime attachment arising from a dispute between two Singapore companies. In the underlying dispute, which is subject to arbitration in Singapore, plaintiff Marubeni International Petroleum (Singapore) Pte Ltd. alleges that defendant Prestige Marine Services Pte Ltd. failed to pay approximately $12 million owed plaintiff under a contract for the monthly supply of "HSFO 380CST" fuel oil. See Amended Verified Complaint ("Compl.") ¶ 9. Defendant, in turn, claims that plaintiff breached the Contract by failing to supply the required fuel. See Affidavit of Jalalludin Bin Abdullah in Support of Defendant's Motion to Vacate Process of Maritime Attachment ("Abdullah Aff.") ¶ 14(a) & Ex. 5. On December 24, 2008, the Court, on plaintiff's ex parte application, issued an order of maritime attachment and garnishment restraining defendant's property in accordance with Supplemental Admiralty Rule B of the Federal Rules of Civil Procedure. Defendant promptly moved to vacate the maritime attachment, on the ground, inter alia, the Court lacked subject matter jurisdiction over plaintiff's underlying claim. Having now had the benefit of the parties' briefs and argument, the Court hereby

grants the motion.

A maritime attachment may issue only if the underlying claim falls within the court's admiralty jurisdiction, that is, that it furthers "the protection of maritime commerce." Sisson v. Ruby, 497 U.S. 358, 367 (1990)(citation omitted). A breach of contract claim, in turn, is subject to admiralty jurisdiction only if the subject matter of the contract "relate[s] to the navigation, business, or commerce of the sea." Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l, Ltd., 968 F.2d 196, 199 (2d Cir. 1992) (quotation and citation omitted). Thus, "[i]n order to be considered maritime, there must be a direct and substantial link between the contract and the operation of the ship, its navigation, or its management afloat." Kreatsoulas v. Freights of the Levant Pride & the Levant Fortune, 838 F. Supp. 147, 150 (S.D.N.Y. 1993) (citation and quotation omitted).

Contracts for the sale of goods historically have been treated as non-maritime contracts whenever the primary obligation of the contract is the act of sale and the contract does not otherwise relate to the navigation, business, or commerce of the sea. See Armour & Co. V. Ft. Morgan Steamship Co., 270 U.S. 253, 259 (1926) ("The original contract to purchase, assemble, and sell the cattle, to charter vessels and therein transport the cattle to Jacksonville, and the agreement of compromise, are not maritime contracts"). Likewise, the mere fact that a ship is used to transfer goods sold under a contract is insufficient to create admiralty jurisdiction. See EFKO Food Ingredients Ltd. v. Pac. Inter-Link SDN BHD, 582 F.

Supp. 2d 466, 470 (S.D.N.Y. 2008) ("It has been widely held that a commodity, sale and purchase contract -- even if the contract requires maritime transport relating to the shipment of the commodity -- is not maritime in nature").  Any rule to the contrary would result in nearly every contract involving the sale of goods transported by ship being governed by admiralty law.  <u>Luckenbach S. S. Co. v. Gano Moore Co.</u>, 298 F. 343, 344 (S.D.N.Y. 1923) (Hand, J.), <u>rev'd on other grounds</u>, 298 F. 344 (S.D.N.Y. 1924).

    Under the contract at issue here, plaintiff's only obligation was to supply 380CST fuel oil, and defendant's only obligation was to pay for the oil.  Plaintiff alleges that the Contract related to the sale of "marine fuel oil," Compl. ¶ 4, but the unambiguous terms of the Contract make no reference to the oil's intended uses.  <u>See</u> Compl.; Abdullah Aff. ¶ 8.  Although plaintiff now proffers affidavits that allege that HSFO 380CST fuel oil has no "terrestrial industrial or commercial purposes" and that "it was always the understanding between the parties in their negotiations for the Contract and the course of the Contract that the HSFO380CST supplied thereunder would be used as bunkers for sea vessels," Affidavit of Chan Chor Choong, Andrew, ¶¶ 3-5, such parol evidence is entirely irrelevant to interpreting the Contract's clear and unambiguous language.  <u>See</u> <u>The Eli Whitney</u>, 8 F. Cas. 455 (C.C.S.D.N.Y. 1848) (No. 4,345) (affirming district court's holding that "parol evidence was inadmissible to enlarge or vary the terms of the charter-party").  Moreover, even assuming that the fuel oil was ultimately intended for

maritime use, here plaintiff does not dispute that defendant itself made no use of the oil sold to it by plaintiff (nor could it, as its vessels run on gasoil, not HSFO 380CST), Abdullah Aff. ¶¶ 9-10, and instead resold the oil to third parties, either for their own use or for further resale. Id. ¶ 12. Thus, because the only obligation of the Contract was the act of sale, and because the primary objective of the Contract related to non-maritime elements, plaintiff's underlying claim of breach of the Contract seemingly falls outside of the Court's admiralty jurisdiction.[1]

It is true, as defendant notes, that several cases have characterized as maritime in nature contracts for the supply of marine fuel to power a party's ships. See, e.g., Exxon Corp. v.

---

[1] Plaintiff's Memorandum of Law focuses extensively on the purported distinction between an allegedly very minimal threshold inquiry supposedly required by Second Circuit precedent into "whether an issue related to maritime interests has been raised" and a subsequent analysis of the primary objective of the contract at issue. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Vacate the Plaintiff's Maritime Attachment, at 7-13; see F. H. Bertling Holding KG v. Ranhill Eng'rs & Constructors Sdn. Bhd., No. 08 Civ. 2003, 2008 U.S. Dist. LEXIS 52085, at *11-17 (S.D.N.Y. July 8, 2008). Even assuming that the Second Circuit's threshold inquiry is still required in the wake of the Supreme Court's ruling in Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14 (2004), such an inquiry is, at best, a threshold inquiry, and a court must still inquire into whether the primary objective of the contract relates to non-maritime elements or whether any alleged breach of maritime obligations are severable from the non-maritime obligations of the contract. See id. at *19 (holding that "[a]though the dispute implicates maritime commerce, the [agreement in question] is not a maritime contract and therefore does not support federal maritime jurisdiction"). Here, as discussed above, the contract in question is a contract for the sale of goods that bears no relation to the navigation, business, or commerce of the sea, and thus cannot form the basis of maritime jurisdiction.

Cent. Gulf Lines, Inc., 500 U.S. 603, 612 (1991); Socony Bunker Oil Co., Ltd. v. S.S. Arno, A-180-349, 1954 AMC 2104 (S.D.N.Y. 1954). But the contracts in those cases typically involved contracts that expressly provided that some or all of the fuel being shipped would be used, at least in part, to power the defendant's vessels.  By contrast, courts in this and other Circuits have long held that contracts to supply fuel to indeterminate vessels in the future do not fall within admiralty jurisdiction.  See, e.g., Garcia v. Warner, Quinlan Co., 9 F. Supp. 1010, 1010 (S.D.N.Y. 1934) (contract to supply fuel oil to fleet of ships not within admiralty jurisdiction); Steamship Overdale Co. v. Turner, 206 F. 339, 341 (D. Pa. 1913) (requirements contract to supply coal to ships not within admiralty jurisdiction, because, "[u]ntil the contract was executed, no particular vessel or no particular voyage was in contemplation of either of the parties").  Here, because no particular vessel or voyage was in the contemplation of either party, and because defendant, in fact, resold the fuel oil to third parties without reference to the oil's intended use, the Contract does not fall within admiralty jurisdiction.

For all of the foregoing reasons, defendant's motion to vacate process of maritime attachment is granted.  The attachment is vacated, and the Clerk of the Court is directed to close the case.[2]

---

[2] In light of this disposition, the Court need not consider defendant's alternative arguments as to why process of maritime attachment should be vacated, or defendant's argument that the attachment order, if not vacated, should be reduced to reflect the true value of its claim.

SO ORDERED.

/s/ Jed S. Rakoff
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
JED S. RAKOFF, U.S.D.J.

Dated:   New York, New York
         January 26, 2009